**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-00815-NYW-STV

STUART PATRICK MCLANEY,

     Plaintiff,

v.

EL PASO COUNTY, COLORADO,
WELLPATH, LLC, as a nominal defendant,
MATTHEW J. DUNDON, in his capacity as trustee for the Wellpath Holdings, Inc.
Liquidating Trust, as a nominal defendant,
JOSEPH ROYBAL, in his individual and official capacities,
SANDRA RINCON, in her individual capacity,
DYLAN COX, in his individual capacity,
KAYLA WHIGHAM, a/k/a KAYLA ZAKRZEWSKI,[1] in her individual capacity,
DONIELLE CODDINGTON, in her individual capacity,
GEORGE SANTINI, in his individual capacity,
ANTHONY LUPO, in his individual capacity,
ZOE ROCHE, in her individual capacity,
EVIE DECKER, in her individual capacity,
NICOLE CARROLL, in her individual capacity, and
PAM DOBYNS, in her individual capacity,

     Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

     This matter is before the Court on the County Defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (the "County Defendants' Motion to Dismiss"), [Doc. 61], and Donielle Coddington and Evie Decker's Motion to Dismiss

---

[1] The Parties represent that Defendant Kayla Whigham has changed her last name. [Doc. 61 at 1; Doc. 71 at 1]. The Parties continue to refer to her as "Whigham." *See*, *e.g.*, [Doc. 61 at 1; Doc. 71 at 2]. For purposes of clarity in this Order, the Court continues to refer to this Defendant as Ms. Whigham, but also notes Ms. Whigham's additional last name as an "a/k/a."

Plaintiff's First Amended Complaint (the "Wellpath Defendants' Motion to Dismiss"),[2]
[Doc. 69].  For the reasons stated in this Order, the County Defendants' Motion to Dismiss
is **GRANTED in part** and **DENIED in part** and the Wellpath Defendants' Motion to
Dismiss is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

These facts are taken from the First Amended Complaint and Jury Demand (the
"Amended Complaint"), [Doc. 44], are presumed true for purposes of this Order, and are
limited to the allegations relevant to the pending Motions.  This case arises out of the
medical treatment (or lack thereof) provided to Plaintiff Stuart McLaney ("Plaintiff" or "Mr.
McLaney") while he was detained at the El Paso County Criminal Justice Center ("CJC").
*See generally* [*id.*].  At all relevant times, and pursuant to a contract between El Paso
County and Wellpath, LLC ("Wellpath"), Wellpath and its employees provided medical
and mental health care to detainees at CJC.  [*Id.* at ¶ 14].

Mr. McLaney has been diagnosed with chronic myeloid leukemia, which he treats
with a daily chemotherapy pill.  [*Id.* at ¶ 1].  Upon his arrival to CJC on March 23, 2023,
Mr. McLaney alerted Defendant Deputy Sandra Rincon ("Deputy Rincon") of his need to
take the medication.  [*Id.* at ¶¶ 2, 27, 33].  Deputy Rincon did not follow up with Mr.
McLaney to ensure that he received his medication.  [*Id.* at ¶ 36].

After days of not receiving his medication, Mr. McLaney began experiencing
immense pain and asked for his treatment "at every opportunity," including "sending

---

[2] Although Plaintiff asserts claims against other Wellpath employees as well, *see* [Doc.
44 at 1], those Defendants have answered the Amended Complaint and do not join in this
Motion, [Doc. 70].  For ease of reference, the Court refers to this Motion as filed by the
"Wellpath Defendants."

numerous grievances articulating his need for his medication and related health measures" over the course of several weeks. [*Id.* at ¶¶ 38–39]; *see also* [*id.* at ¶¶ 40–50 (describing Plaintiff's efforts)]. Relevant here, on May 5, 2023, Defendant Evie Decker, a Wellpath nurse ("Nurse Decker"), saw Mr. McLaney for a mental health assessment. [*Id.* at ¶¶ 21, 46]. Mr. McLaney informed Nurse Decker of his cancer, expressed concerns that it would progress while he was detained at CJC, and explained that his requests for medication had been ignored. [*Id.* at ¶ 46]. Nurse Decker noted in her assessment that Mr. McLaney had "terminal/incurable illness or pain," but despite her knowledge that "Mr. McLaney needed his critical daily chemotherapy medicine," Nurse Decker took no action to ensure that he received his medication. [*Id.*]. The next day, Mr. McLaney filed another grievance, stating that he had been at CJC since March 23 and still had not received his chemotherapy medicine or "any of" his medication. [*Id.* at ¶ 47]. He reported that he could "feel [himself] getting sicker every day" and asked for a vegetarian diet. [*Id.*]. Defendant Kayla Whigham, an El Paso County sheriff's deputy ("Ms. Whigham"),[3] told Mr. McLaney that he needed to send his complaints to medical. [*Id.* at ¶¶ 25, 47]. She took no action to ensure that he received his medicine. [*Id.* at ¶ 47].

On May 9, 2023, Mr. McLaney "followed up . . . to reiterate his request for vegetarian meals," stating that he was asking for his "proper diet" because he was not

---

[3] Plaintiff alleges that Ms. Whigham was employed "as an [sic] Defendant El Paso County sheriff's deputy." [Doc. 44 at ¶ 25]. The County Defendants state that Ms. Whigham "is an [El Paso County Sheriff's Office] employee," [Doc. 61 at 2 n.2], but do not address her with any specific title, *see* [*id.* at 3 (addressing Deputy Rincon as "Dep. Rincon," but Ms. Whigham as "Whigham")]. Plaintiff, meanwhile, asserts in his Response that Ms. Whigham is "an employee of El Paso County, and not the Sheriff's Office." [Doc. 71 at 7]. For purposes of this Order, the Court must rely on the facts alleged in the Amended Complaint, not any factual assertions raised in a motion or related briefing. But given all of this uncertainty, the Court simply refers to Defendant Whigham as "Ms. Whigham."

receiving "[his] proper meds for [his] stage two [leukemia]." [*Id.* at ¶ 49]. He concluded, "Please help." [*Id.*]. Defendant Donielle Coddington, a Wellpath nurse ("Nurse Coddington"), responded on May 12, 2023 that "[m]edical does not offer a vegetarian diet unless medically necessary." [*Id.* at ¶¶ 26, 49]. She did not mention his cancer and did not take any action to ensure that Mr. McLaney received his medication. [*Id.* at ¶ 49].

On May 26, 2023, Plaintiff submitted another grievance, alerting both "El Paso County sheriff's deputies and . . . Wellpath staff" that he was having trouble breathing, getting short of breath, and experiencing lightheadedness. [*Id.* at ¶ 53]. He stated that he was "[p]retty sure" his symptoms "ha[d] something to do with" his leukemia. [*Id.*]. He was still not seen by a Wellpath physician until four days later, and he was still not given his medication. [*Id.*].

Despite asking "multiple times" for his medication over the next several weeks, and despite Plaintiff's continued "immense pain and distress," Plaintiff was never provided his medication. [*Id.* at ¶ 54]. On June 13, 2023, Defendant Pam Dobyns, a Wellpath nurse ("Nurse Dobyns"), told Mr. McLaney that she knew his leukemia needed to be treated, but "there was an insurance problem"; she also told Mr. McLaney that the medication "might require special monitoring that they were unequipped to provide at the CJC." [*Id.* at ¶¶ 23, 56]. According to Plaintiff, Nurse Dobyns "indicated in her notes that she had spoken to the CJC management about Mr. McLaney's situation." [*Id.* at ¶ 57]. He alleges that, "[u]pon information and belief," Nurse Dobyns spoke to Defendant Joseph Roybal, the El Paso County Sheriff ("Sheriff Roybal"), "about Mr. McLaney's situation." [*Id.*]. However, Sheriff Roybal took no action to ensure that Mr. McLaney was provided his medication. [*Id.*].

After four months, Mr. McLaney was released from CJC on July 24, 2023.  [*Id.* at ¶ 59].  He was never provided his medication "or other critical medicine" while detained at CJC.  [*Id.*].  He immediately resumed his medication upon his release, but due to the four-month lapse in treatment, his life expectancy has decreased.  [*Id.* at ¶¶ 1, 4, 60].  In addition, Mr. McLaney "experienced immense physical pain and severe emotional distress" during his detention in CJC and "continues to experience dread about his [cancer] progression that he would not have but for the lapse in his treatment caused by the deliberate indifference of the Defendants."  [*Id.* at ¶ 61].

Mr. McLaney alleges that his injuries "were directly caused by the actions and inactions of Defendant El Paso County sheriff's deputies and Defendant Wellpath staff." [*Id.* at ¶ 5].  He asserts four claims in this case:  (1) a Fourteenth Amendment deliberate indifference claim against all Defendants ("Claim One"), [*id.* at ¶¶ 166–86]; (2) a claim for inadequate medical care and treatment under Colo. Rev. Stat. § 13-21-131(1) and the Colorado Constitution against Sheriff Roybal, Deputy Rincon, and Ms. Whigham ("Claim Two"),[4] [*id.* at ¶¶ 28, 187–208]; (3) a negligence claim against a number of Wellpath Defendants, including Nurse Decker and Nurse Coddington ("Claim Three"), [*id.* at ¶¶ 209–17];[5] and  (4) a negligent supervision or negligent undertaking claim against

[4] Claim Two is asserted against "Defendant Deputies," which Plaintiff defines to include only Sheriff Roybal and Deputy Rincon.  [Doc. 44 at ¶ 28]; *see also* [*id.* at 53].  The County Defendants construe Claim Two as asserted against Sheriff Roybal, Deputy Rincon, *and* Ms. Whigham, [Doc. 61 at 3, 20], and Mr. McLaney does not dispute that characterization, *see* [Doc. 71].  Accordingly, the Court follows the Parties' approach and construes Claim Two as asserted against Ms. Whigham as well.

[5] Claim Three is also asserted against Wellpath, Dr. Santini, Nurse Anthony Lupo, Nurse Zoe Roche, Nurse Nicole Carroll, Nurse Dobyns, and Nurse Dylan Cox.  [Doc. 44 at 56].  In addition, Plaintiff also names Ms. Whigham in Claim Three.  [*Id.*].  However, the County Defendants represent that "Plaintiff has agreed to withdraw his state law negligence claim against [Kayla] Whigham," [Doc. 61 at 2], and Plaintiff confirms this in his Response, [Doc.

Wellpath, [*id.* at ¶¶ 218–33].

El Paso County, Sheriff Roybal, Deputy Rincon, and Ms. Whigham (collectively, the "County Defendants") move to dismiss Plaintiff's claims against them under Rules 12(b)(1) and 12(b)(6). [Doc. 61]. Separately, Nurse Coddington and Nurse Decker (collectively, the "Wellpath Defendants") move to dismiss the claims against them under Rule 12(b)(6). [Doc. 69]. The Motions are fully briefed and ripe for disposition.

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

### I.    The Wellpath Defendants' Motion to Dismiss

Plaintiff asserts one Fourteenth Amendment deliberate indifference claim and one common law negligence claim against Defendants Coddington and Decker. [Doc. 44 at

---

71 at 2 n.1]. The Court thus deems Claim Three **WITHDRAWN** as to Ms. Whigham, and Claim Three is **DISMISSED** against Ms. Whigham **without prejudice**.

50, 56]. They move to dismiss both claims. [Doc. 69].

### A.    Deliberate Indifference

"Under the Fourteenth Amendment due process clause, 'pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985) (alteration in original)).[6] "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

A deliberate indifference claim has two components: one is objective, and the other is subjective. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires a plaintiff to allege facts demonstrating that "the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata*, 427 F.3d at 753 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quotation omitted). And the subjective component requires a plaintiff to allege facts establishing that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Sealock*, 218 F.3d at 1209. To make this

---

[6] In evaluating Fourteenth Amendment deliberate indifference claims, courts in the Tenth Circuit "apply an analysis identical to that applied in Eighth Amendment cases." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) (quotation omitted). Accordingly, in its analysis, the Court cites to cases discussing deliberate indifference claims asserted under both the Eighth and Fourteenth Amendments.

showing, a plaintiff must allege facts demonstrating that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "[did] draw the inference." *Farmer*, 511 U.S. at 837.

Nurses Coddington and Decker argue that Plaintiff's allegations are insufficient to meet the subjective component of the deliberate-indifference test, [Doc. 69 at 6], and the Court's analysis is limited accordingly.

With respect to Nurse Coddington, the Wellpath Defendants contend that Plaintiff's allegations are deficient because "Plaintiff does not allege that Ms. Coddington saw him in person" and there are no facts "that could allow a factfinder to infer that [Nurse Coddington] consciously disregarded a substantial risk of harm to Plaintiff's health or safety." [Doc. 69 at 6–7]. The Court agrees with this argument. Mr. McLaney alleges that, on May 9, 2023, he submitted a request for a vegetarian diet, stating: "I'm asking for my proper diet cuz I'm not receiving my proper meds for my stage two lukemia. Please help. [sic]." [Doc. 44 at ¶ 49]. Nurse Coddington allegedly responded that "[m]edical does not offer a vegetarian diet unless medically necessary." [*Id.*]. Plaintiff alleges that "[d]espite being aware that Mr. McLaney needed his life-saving daily oral . . . chemotherapy pill and other critical medicine, Defendant Coddington did not take any action to ensure that Mr. McLaney was provided any of his medicine." [*Id.*].

However, the lone factual assertion that Nurse Coddington knew Mr. McLaney was not receiving his "proper meds" does not support Plaintiff's conclusion that Nurse Coddington was aware that Mr. McLaney was being denied his "life-saving daily oral . . . chemotherapy pill" or other "critical medicine." *See* [*id.*]. There are no facts plausibly establishing that Nurse Coddington knew anything specific about Plaintiff's condition,

what medication Plaintiff was prescribed, how often he needed to take that medication, or how long he had been deprived of the medication.  *See generally* [*id.*].  Simply put, the Amended Complaint contains insufficient facts to plausibly establish that Nurse Coddington was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" to Mr. McLaney and also "[drew] the inference." *Hardy v. Rabie*, 147 F.4th 1156, 1165 (10th Cir. 2025) (quotation omitted).  Accordingly, the Motion to Dismiss is **GRANTED** with respect to Claim One against Nurse Coddington, and this portion of Claim One is **DISMISSED without prejudice**.

As for Nurse Decker, the Wellpath Defendants note that Ms. Decker is a "mental health professional" who "perform[ed] [a] mental health assessment," [Doc. 69 at 6 (citing [Doc. 44 at ¶ 46])], and they assert that "Plaintiff does not allege that Ms. Decker was a medical professional who had the ability to treat his [cancer]," [*id.* at 7].  But they cite no authority demonstrating that, to state a deliberate indifference claim, the provider's specialty must be an exact match for the detainee's medical need.  It is well settled in the Tenth Circuit that a plaintiff can meet the subjective prong by alleging that a defendant "prevent[ed] treatment or den[ied] access to a medical professional capable of evaluating the need for treatment (the gatekeeper theory)."  *Est. of Angelo v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, No. 23-cv-01607-CNS-STV, 2024 WL 2274080, at *7 (D. Colo. May 20, 2024) (citing *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1138 (10th Cir. 2023)).  If a provider's role is to "serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference."  *Sealock*, 218 F.3d at 1211.

The Tenth Circuit has explained that a medical provider can act simultaneously as

a provider and a gatekeeper.  *See Lucas*, 58 F.4th at 1143 n.5.  "[A] physician's role often involves treating the patient while simultaneously considering the need for referral to someone with more specialized training at the same time."  *Id.* at 1143.  So, for instance, a mental health provider could disregard a serious medical need in her *treatment* of a patient by failing to provide constitutionally adequate mental health services and simultaneously disregard a serious medical need in her role as a *gatekeeper* by failing to seek specialized medical assistance to treat a serious medical need.  *See Oxendine v. Kaplan*, 241 F.3d 1272, 1278–79 (10th Cir. 2001) (allegations that physician delayed seeking specialized surgical assistance for inmate were sufficient to meet subjective component).

Plaintiff's allegations detailing the scope of Nurse Decker's knowledge are more robust than the allegations about Nurse Coddington.  Mr. McLaney alleges that he spoke with Nurse Decker in person and informed her that he needed his medication, had signed all necessary forms to receive his medication, and had filed numerous unsuccessful grievances to obtain his medication.  [Doc. 44 at ¶ 46].  Nurse Decker noted that Mr. McLaney had "terminal/incurable medical illness or pain" and recorded his concern that "he would not be able to handle the mental health impacts of *his progression* of his [cancer] while incarcerated."  [*Id.* (emphasis added)].  Thus, Plaintiff alleges that Nurse Decker was aware (1) of the seriousness of his disease and the fact that Plaintiff expected it to progress while incarcerated, and (2) that Plaintiff had made numerous requests for his medication, which suggests urgency, but his requests had been unaddressed without explanation.  But despite "being aware that Mr. McLaney needed his critical daily chemotherapy medicine," Nurse Decker "did not take any action to ensure" that he

received his medication.  [*Id.*].  These allegations are sufficient to allege Nurse Decker's

subjective disregard of a serious medical need.[7]

Finally, the Wellpath Defendants argue that Plaintiff's allegations that Nurse

Decker "did not take any action" to ensure he received his medication are too general to

satisfy the subjective component.  [Doc. 69 at 7].  But because the very essence of the

claim is that Nurse Decker failed to do *anything* to help Plaintiff, it is unclear to the Court

what other allegations would be necessary to state a plausible claim.  Nor is the Court

persuaded by the Wellpath Defendants' framing of the dispute as a mere disagreement

in treatment.  *See* [*id.*]; *see also Strain v. Regalad*o, 977 F.3d 984, 987 (10th Cir. 2020)

("Disagreement about course of treatment . . . do[es] not amount to a constitutional

violation.").  "[D]oing nothing in the face of serious medical needs is obviously sufficient

to state a claim" under a gatekeeper theory.  *Lucas*, 58 F.4th at 1139.  The failure to take

any action to ensure that Plaintiff received his "life-saving" medication, *see* [Doc. 44 at

¶ 46], with the knowledge that Plaintiff's disease was "terminal/incurable" and that his

requests were being ignored, cannot be written off as a mere disagreement in treatment,

---

[7] The Wellpath Defendants argue that "the Tenth Circuit has found that the failure to pass
on information does not equate to deliberate indifference."  [Doc. 81 at 4 (citing *Sealock*,
218 F.3d at 1211)].  The Court disagrees that *Sealock* announced such a broad rule in its
case-specific analysis.  *See Sealock*, 218 F.3d at 1211 (finding, under the facts of that
case, that a nurse's failure to pass on information about an inmate's chest pain was
insufficient to establish deliberate indifference).  In other cases, similar facts have
supported a claim of deliberate indifference.  *See, e.g.*, *Paugh v. Uintah Cnty.*, 47 F.4th
1139, 1160 (10th Cir. 2022) (reasonable jury could find that jail official "abdicated her
gatekeeping role by not relaying [a medical] problem to medical staff" (cleaned up)); *Burke
v. Regalado*, 935 F.3d 960, 994 (10th Cir. 2019) (reasonable jury could conclude that
gatekeepers acted with deliberate indifference "by failing to relay [a medical crisis] to
medical staff"); *Est. of Jensen ex rel. Jensen v. Clyde*, 989 F.3d 848, 859 (10th Cir. 2021)
(denying nurse qualified immunity and finding the plaintiff "ha[d] sufficiently shown
deliberate indifference" based on the nurse's failure to alert doctor or physician assistant
about inmate's deteriorating condition).

*see Rogacki v. Jefferson Cnty.*, No. 21-cv-02281-CNS-KLM, 2022 WL 16551336, at *6 (D. Colo. Oct. 31, 2022) (denial of proper medical care is not simply a disagreement in treatment); *Campbell v. Monday*, No. 22-cv-00399-R, 2023 WL 7553569, at *3 (W.D. Okla. Nov. 14, 2023) (same); *Hunt*, 199 F.3d at 1223–24 (disagreeing with the district court that the plaintiff alleged only a "mere disagreement with his medical treatment" where he alleged that his medication was confiscated and he did not receive proper treatment or procedures).

Plaintiff's allegations are sufficient to state a Fourteenth Amendment Claim against Nurse Decker, and the Wellpath Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal of that portion of Claim One.

## B.    Negligence

The Wellpath Defendants also ask the Court to dismiss the negligence claims asserted against them.  [Doc. 69 at 8].  "[T]o establish a claim for negligence by medical personnel, a plaintiff must allege the same elements as for any other negligence claim." *Est. of Newman v. Bd. of Cnty. Comm'rs of the Cnty. of Montezuma*, No. 22-cv-01763-PAB-KAS, 2024 WL 1300278, at *3 (D. Colo. Mar. 27, 2024) (quotation omitted).  To survive a motion to dismiss, a plaintiff asserting a medical negligence claim must allege facts establishing "(1) the existence of a legal duty; (2) [a] breach of that duty; (3) causation; and (4) damages."  *Thompson v. State Farm Mut. Auto. Ins. Co.*, 789 F. App'x 90, 92 (10th Cir. 2019) (citing *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002)).

The Wellpath Defendants argue:

The allegations in the Amended Complaint demonstrate that [Plaintiff's] request[s] for medication were documented in the chart by both Ms.

> Coddington and Ms. Decker. . . . Plaintiff does not allege that the [Wellpath] Defendants had the ability to prescribe him medication themselves. Any such action would have fallen outside their scope of practice under Colorado's Nurse Practice Act. Nor does Plaintiff allege that they failed to document his concerns in his chart. The Amended Complaint is devoid of allegations that demonstrate the [Wellpath] Defendants were involved in Plaintiff's routine medical care during his incarceration. Ms. Coddington simply answered a Kite Plaintiff submitted to the jail and Ms. Decker performed a single mental health assessment. Based upon the allegations in the Amended Complaint, Plaintiff has failed to allege how the [Wellpath] Defendants breached a legal duty owed to him.

[Doc. 69 at 8]. This argument is not supported by any legal authority.

It is unclear to the Court which element(s) of a negligence claim the Wellpath Defendants challenge when they argue that "Plaintiff has failed to allege how the Individual defendants breached a legal duty owed to him." [*Id.*]. Plaintiff asserts in his Response that Nurse Coddington and Nurse Decker "owed Mr. McLaney a duty of care to provide for his medical needs [while] detained at the CJC." [Doc. 79 at 11]; *see also English v. Griffith*, 99 P.3d 90, 94 (Colo. App. 2004) (explaining that a duty to protect may arise if "the defendant either had a treating or supervisory relationship with [the plaintiff] or maintained custodial control over [the plaintiff's] environment"); Colo. Rev. Stat. § 16-3-401(2) ("Persons arrested or in custody shall be treated humanely and provided with adequate food, shelter, and, if required, medical treatment."). Assuming that Nurse Decker and Nurse Coddington owed Mr. McLaney a duty to protect and/or a duty to provide medical treatment,[8] Plaintiff has sufficiently alleged, albeit more strongly with

---

[8] "Whether a legal duty exists is a question of law for the court to determine." *Fine v. Tumpkin*, 330 F. Supp. 3d 1246, 1252 (D. Colo. 2018). Because the issue is not presented in the Wellpath Defendants' Motion to Dismiss, *see generally* [Doc. 69], the Court does not pass on this issue, particularly given that the Wellpath Defendants have been represented by able counsel since the inception of this case. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself.").

respect to Nurse Decker, that the Wellpath Defendants breached that duty by failing to take *any action* to help Plaintiff receive his critical and life-saving medical treatment. *See* [Doc. 44 at ¶¶ 46, 49]. Insofar as the Wellpath Defendants suggest that they did all they were required to do because they documented Plaintiff's medication requests, they have simply identified a factual dispute that this Court cannot resolve. *See Perreira v. State*, 768 P.2d 1198, 1208 (Colo. 1989) ("If a court determines that the defendant owed a legal duty to the plaintiff, then the question of whether the defendant has breached that duty and thereby caused damage to the plaintiff is a matter for the jury's determination.").

The Wellpath Defendants have not persuaded the Court that dismissal of the negligence claim against them is warranted at this time. As a result, the remainder of the Wellpath Defendants' Motion to Dismiss is **DENIED**.[9]

## II.    The County Defendants' Motion to Dismiss

### A.    The Proper County Defendant

The County Defendants first argue that El Paso County is improperly named as a Defendant in this case. [Doc. 61 at 10–11]. Under Colorado statute, to properly sue a county, a plaintiff is required to name the county's board of county commissioners. *See*

---

[9] The Wellpath Defendants also argue that the negligence claim should be dismissed for failure to file the certificate of review, which is required by Colorado statute. *See* [Doc. 69 at 5, 8]; *see also* Colo. Rev. Stat. § 13-20-602(1)(a), (3). In response, Plaintiff directs the Court to paragraph 29 of his Amended Complaint, which he says complies with the certificate-of-review requirement. [Doc. 79 at 8; Doc. 44 at ¶ 29]. The Wellpath Defendants do not address this argument in their reply brief, *see* [Doc. 81], which the Court construes as a concession that Plaintiff's certification is adequate. The Court also notes that, on January 20, 2026, the Supreme Court held that a Delaware law containing requirements similar (but not identical) to the Colorado statute does not apply in federal court. *See Berk v. Choy*, No. 24-440, 2026 WL 135974, at *7 (U.S. Jan. 20, 2026). The Court need not decide whether *Berk* governs this case because *if* a certificate of review is still required, Plaintiff submitted one with his Amended Complaint.

Colo. Rev. Stat. § 30-11-105 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of ................'"). A number of courts in this District have dismissed claims asserted against a county, as a standalone entity, pursuant to this statute. *See, e.g.*, *Watkins v. Douglas Cnty.*, No. 20-cv-01172-RM-MEH, 2020 WL 8408482, at *15 (D. Colo. Sept. 15, 2020), *report and recommendation adopted*, 2021 WL 100117 (D. Colo. Jan. 12, 2021); *Est. of Lillis ex rel. Lillis v. Correct Care Sols., LLC*, No. 16-cv-03038-KLM, 2018 WL 1569752, at *16 (D. Colo. Mar. 30, 2018).

The County Defendants argue that Plaintiff's decision to name El Paso County alone is a "jurisdictional defect" that requires dismissal of the County from this case. [Doc. 61 at 11 (quotation omitted)].[10] Mr. McLaney disagrees. He argues that the County

---

[10] The Court respectfully disagrees that this argument presents a subject matter jurisdiction question or implicates Rule 12(b)(1). To be sure, the Colorado Supreme Court has stated that the statutory language in § 30-11-105 "provides the exclusive method by which jurisdiction over a county can be obtained." *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (1967). A fair number of courts, relying on this language, have suggested that the failure to name a county through its board of county commissioners is a "jurisdictional defect." *See, e.g.*, *Wilkenson v. Colorado*, No. 13-cv-01469-CMA-KLM, 2013 WL 6978510, at *5 (D. Colo. Dec. 17, 2013), *report and recommendation adopted in part,* 2014 WL 103903 (D. Colo. Jan. 10, 2014). But the Tenth Circuit has recently expressed skepticism that the statute implicates subject matter jurisdiction. *See Griffith v. El Paso Cnty.*, 129 F.4th 790, 834 n.32 (10th Cir. 2025) ("It is not at all clear that Colo. Rev. Stat. 30-11-105 is about *subject matter* jurisdiction."). "Jurisdiction . . . is a word of many, too many, meanings." *Wilkins v. United States*, 598 U.S. 152, 156 (2023) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)). "[T]he word 'jurisdictional' is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548 (2019). Section 30-11-305 does not govern the classes of cases a court may entertain, but simply states that a county must be sued through its board of county commissioners. Accordingly, the Court finds that the County Defendants' argument does not implicate the Court's subject matter jurisdiction or dismissal under Rule 12(b)(1), and the Court will instead address the arguments as if raised under Rule 12(b)(6).

Defendants' argument "wrongly presumes a *state* statute, . . . governs the prosecution of a *federal* civil rights lawsuit under Section 1983," asserting that this position "overlooks the Supremacy Clause of the Constitution and the history of Section 1983." [Doc. 71 at 6]. The County Defendants respond that the statute "does not prevent Plaintiff from suing a municipal government," but instead "simply says that he must sue the municipal government in its correct name." [Doc. 78 at 3].

The Supremacy Clause provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. "[A]lthough States retain substantial leeway to establish the contours of their judicial systems, they lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies." *Haywood v. Drown*, 556 U.S. 729, 736 (2009). To the extent that § 30-11-105 simply clarifies the correct entity to name as a party in a lawsuit, the Court would agree with the County Defendants that applying the statute would not run afoul of the Supremacy Clause. But if the statute *does* act to limit a plaintiff's ability to sue, then the Court would agree with Mr. McLaney that the statute cannot be enforced in a § 1983 action, as it cannot constitutionally limit the causes of action available under federal law. *See Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 272 F. Supp. 3d 1256, 1269 n.4 (D.N.M. 2017) (finding that identical New Mexico statute "does not impose the same limit on § 1983 claims that it imposes on state claims" based on Supremacy Clause principles).

Although Mr. McLaney invokes the Supremacy Clause, he does not actually identify a manner in which the state statute conflicts with § 1983 or limits his ability to sue under § 1983. *See* [Doc. 71 at 5–7]. At best, he argues that "[e]ven assuming that state

law should guide this Court, the Board of County Commissioners does not have any role in policymaking regarding medical care at the CJC," [*id.* at 6 n.3], which the Court could reasonably construe as an assertion that if Plaintiff is required to name the Board of County Commissioners (instead of El Paso County itself), then he will be unable to bring a municipal § 1983 claim based on his treatment at CJC because the Board of County Commissioners does not make policies for the jail.  This is not an irrational argument:  a municipality can be held liable only for "(1) actions taken by subordinate employees in conformity with preexisting official policies or customs and (2) actions taken by final policymakers, whose conduct 'can be no less described as the official policy of a municipality,'" *Whitson v. Bd. of Cnty. Comm'rs of Cnty. of Sedgwick*, 106 F.4th 1063, 1066–67 (10th Cir. 2024) (quotation omitted); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978), and there is a split of authority in this District as to whether a sheriff's office or a board of county commissioners is the proper defendant in a § 1983 action based on policies attributable to a sheriff, *see Coates v. Adams Cnty. Sheriff's Off.*, 631 F. Supp. 3d 976, 997 (D. Colo. 2022) (collecting cases); *see also Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty.*, 426 F. Supp. 3d 802, 808–14 (D. Colo. 2019) (discussing this issue in great length and detail).  And at least a few courts in this District have concluded that a board of county commissioners is not the proper municipal defendant where a claim is based on actions attributable to a sheriff or sheriff's office. *See, e.g., Lockhart v. Van Beek*, No. 24-cv-00991-PAB-TPO, 2025 WL 661789, at *7 (D. Colo. Feb. 28, 2025); *Est. of Began v. Lake Cnty., Colo. Sheriff's Off.*, No. 07-cv-01786-WDM-CBS, 2008 WL 2690702, at *6 (D. Colo. July 3, 2008); *but see Chavez*, 426 F. Supp. 3d at 809, 813–14 (ultimately concluding that it "does not matter" whether a board

of county commissioners or a sheriff's office is named in a lawsuit based on sheriff's office policies because discovery will be the same regardless and the county is ultimately responsible for paying any judgment against either entity).  Therefore, Plaintiff could be arguing that if he cannot name the County directly, then he will be precluded from asserting a municipal § 1983 claim.

But the Court does not see those concerns coming to fruition here, in this case. To the extent that a sheriff's office is the proper defendant for claims based on a sheriff's or sheriff's office's actions or policies, then Plaintiff's *Monell* claim, to the extent it is based on actions or policies attributable to Sheriff Roybal or the El Paso County Sheriff's Office, *see, e.g.*, [Doc. 44 at ¶¶ 178, 180–81 (alleging that Sheriff Roybal failed to train and supervise his employees)], has been properly asserted by naming Sheriff Roybal in his official capacity.[11]   *See Est. of Angelo*, 2024 WL 2274080, at *20; [Doc. 71 at 7 n.4 (Plaintiff acknowledging that "[e]ven should this Court dismiss Mr. McLaney's claim against Defendant El Paso County, this case will proceed under a *Monell* theory of liability, as Mr. McLaney named Defendant Roybal in his official capacity")].  And Plaintiff can still assert a *Monell* claim against El Paso County to the extent the claim is based on *the County's* decisions or policies—for example, claims based on the County's alleged decision to contract with Wellpath despite knowledge of Wellpath's "longstanding and

---

[11] Courts have construed claims against a sheriff in his official capacity as against the sheriff's office for which he works and as against the county for which he is an officer. *See, e.g.*, *Est. of Angelo*, 2024 WL 2274080, at *20 (construing claim as asserted against the sheriff's office); *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent."); *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (suit against sheriff in his official capacity was "the equivalent of" a suit against the county (quotation omitted)).  The Court need not make any such determination of the proper classification at this time.

widespread custom . . . of providing constitutionally inadequate medical care."  *See* [Doc. 44 at ¶¶ 14, 154]; *see also Duran v. Wellpath, LLC*, No. 23-cv-02853-CNS-NRN, 2024 WL 2939167, at *10 (D. Colo. June 11, 2024) (declining to dismiss claim against board of county commissioners at the pleading stage where the plaintiff "plausibly alleged the [b]oard's involvement with setting jail policy" because the board hired Wellpath with knowledge that it would not provide constitutionally adequate medical care).  He simply must name the Board of County Commissioners to do so.  Colo. Rev. Stat. § 30-11-105.

"[A] simple amendment to [the] Amended Complaint would easily cure this technical defect."  *Wilkenson v. Colorado*, No. 13-cv-01469-CMA-KLM, 2013 WL 6978510, at *5 (D. Colo. Dec. 17, 2013*), report and recommendation adopted in relevant part*, 2014 WL 103903 (D. Colo. Jan. 10, 2014).  Mindful that the Federal Rules must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court elects to sua sponte substitute the Board of County Commissioners of the County of El Paso as a Defendant in this case in place of "El Paso County."  *See Niner v. Garrett Cnty. Pub. Works*, No. 17-cv-02948-ELH, 2018 WL 3869748, at *10 (D. Md. Aug. 15, 2018) ("To avoid the waste of time and resources that would follow from granting plaintiff leave to amend the suit merely to substitute the proper defendant, I shall substitute the Garrett County Board of Commissioners as the defendant in this litigation, in lieu of [the County's Department of Public Works]."); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

In so doing, the Court is mindful that courts across the country routinely sua sponte amend the case caption to reflect technical errors such as improper designations and

misspellings when it is clear who the plaintiff intended to sue. *See, e.g.*, *Orrs v. Cohen*, No. 86-cv-07218, 1987 WL 14150, at *1 n.2 (E.D. Pa. July 17, 1987); *Sharp v. Verizon Delaware LLC*, No. 11-cv-01209-RGA-CJB, 2014 WL 350089, at *1 n.1 (D. Del. Jan. 31, 2014), *report and recommendation adopted*, 2014 WL 707238 (D. Del. Feb. 21, 2014); *Bazant v. United States of Am. Transp. Sec. Admin.*, No. 23-cv-00135-BLG-SPW-TJC, 2024 WL 5118534, at *4 (D. Mont. Oct. 23, 2024), *report and recommendation adopted*, 2025 WL 27588 (D. Mont. Jan. 3, 2025). Moreover, initiating this technical correction will not prejudice the County Defendants. The County is clearly on notice of Plaintiff's lawsuit, as it has retained counsel and has moved to dismiss Plaintiff's municipal claims under Rule 12(b)(6). *See* [Doc. 61 at 17–19]. And substituting the Board of County Commissioners as a proper party will not actually *change* the municipal entity sued, as the County Defendants themselves concede. *See* [Doc. 78 at 3]; *see also Bachor v. Board of Cnty. Comm'rs of La Plata Cnty.*, No. 21-cv-02276-LTB-NRN, 2023 WL 2824364, at *4 (D. Colo. Mar. 15, 2023) (recognizing that "the correct (albeit misnamed) party has been served and was on notice of this lawsuit" where county was erroneously named instead of board of county commissioners). Rather, it will simply ensure that the proper Party is technically named; ensure that the claims against the County (through the Board of County Commissioners) will be addressed on the sufficiency of the allegations, not on a technicality; and avoid unnecessary additional motions practice that would result from the filing of an amended pleading.

Thus, in the Court's view, changing the caption to name the Board of County Commissioners of the County of El Paso would "merely rectif[y] a misnomer or technical error." *Id.* at *3. Accordingly, this Court exercises its discretion to **SUBSTITUTE** the

Board of County Commissioners of the County of El Paso in as a Defendant in place of El Paso County. The Clerk of Court is **DIRECTED** to amend the case caption to replace "El Paso County" with "Board of County Commissioners of the County of El Paso." With this matter resolved, the Court turns to the Parties' substantive arguments.[12]

### B.    The Sufficiency of Plaintiff's Allegations

The County Defendants next argue that Mr. McLaney's claims should be dismissed for failure to state a claim. First, they assert that Plaintiff "fails to state a plausible § 1983 claim against any individual County Defendant." [Doc. 61 at 11 (emphasis omitted)]. Relatedly, they also argue that the individual County Defendants are entitled to qualified immunity. [*Id.* at 16]. And finally, they contend that Mr. McLaney fails to state a plausible *Monell* claim. [*Id.* at 17]. The Court addresses these arguments in turn.

### 1.    Deliberate Indifference Claim Against Individual Defendants

The County Defendants seek dismissal of Claim One against Deputy Rincon, Ms. Whigham, and Sheriff Roybal in his individual capacity, arguing that Plaintiff has not satisfied the subjective component of a deliberate indifference claim by plausibly alleging that any of these individuals disregarded a known and substantial risk to Plaintiff's health

---

[12] The Court acknowledges that courts often find that an official capacity claim asserted against a county official is duplicative of a claim simultaneously asserted against a county. *See, e.g.*, *Hardy v. Adams Cnty.*, No. 22-cv-02843-WJM-MDB, 2024 WL 1156606, at *8 (D. Colo. Mar. 18, 2024), *aff'd and remanded sub nom. Hardy v. Rabie*, 147 F.4th 1156. The Court expressly informs the Parties that it does not find dismissal on the basis of redundancy appropriate at this time. Although Plaintiff will eventually need to clearly identify his specific *Monell* theories, including "the policy at issue and the policymaker(s) to whom the policy is attributable," the Court will permit claims against the Board of County Commissioners and Sheriff Roybal in his official capacity to simultaneously proceed at this juncture. *See Chavez*, 426 F. Supp. 3d at 814 (recognizing that although the plaintiff would need to clearly explain his *Monell* theories at summary judgment and/or trial, "no such evaluations [were] needed" at the pleading stage).

or safety.  [*Id.* at 11–16].

**Deputy Rincon.**  With respect to Deputy Rincon, the County Defendants assert that "Plaintiff merely claims that he informed her of his [cancer] diagnosis during his booking into CJC," but the Amended Complaint alleges "no other interaction with Plaintiff during his four-month stay in CJC." [*Id.* at 13].  They argue that "there is no basis to claim that [Deputy] Rincon was deliberately indifferent." [*Id.*].  Mr. McLaney responds that he "adequately alleges that Defendant Rincon was subjectively deliberate indifferent to his substantial risk of harm" because he has alleged that she "did not ensure that he received his medication, despite her knowledge of his daily need for chemotherapy medication, . . . and the obvious risk that days may pass without treatment." [Doc. 71 at 8 (citing [Doc. 44 at ¶¶ 33–36]) (emphasis omitted)].

The Court respectfully agrees with the County Defendants.  Mr. McLaney alleges that he informed Deputy Rincon upon his arrival to CJC that he needed to take his daily medication, but that Deputy Rincon "[n]ever followed up with [him] to ensure he received his medication." [Doc. 44 at ¶¶ 33, 36].  But there are no allegations that Deputy Rincon was even aware that Mr. McLaney was denied his medication.  *See* [*id.*].  And critically, the substantial risk of serious harm alleged by Plaintiff derives not simply from the fact of his leukemia, but from the denial of medication necessary to treat or prevent the progression of his leukemia.  Stated differently, Plaintiff's Amended Complaint does not plausibly allege that Deputy Rincon was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" to Mr. McLaney and also "[drew] the inference." *Hardy*, 147 F.4th at 1165.  Accordingly, the County Defendants' Motion to Dismiss is **GRANTED** as to Claim One against Deputy Rincon, and this portion of Claim

One is **DISMISSED without prejudice**.

*Ms. Whigham.*   Next, the County Defendants argue that Plaintiff's allegations are insufficient to establish that Ms. Whigham knew of and disregarded a serious risk to Plaintiff's health or safety.  [Doc. 61 at 13].  Mr. McLaney alleges that, on May 6, 2023, he filed a grievance stating that he had been at CJC since March 23 and still had not received his chemotherapy pill "or any of [his] meds."  [Doc. 44 at ¶ 47].  He also included that he had stage-two leukemia and that he could "feel [himself] getting sicker every day." [Doc. 61-1 at 1 (emphasis omitted)].[13]  Ms. Whigham "directed Mr. McLaney to address his grievance to medical staff," [Doc. 44 at ¶ 47], stating, "[i]f you are needing something for medical reasons, medical must assist you," [Doc. 61-1 at 1].  Ms. Whigham "did not take any action to ensure that Mr. McLaney was provided his life-saving daily oral TKI chemotherapy pill or other critical medicine."  [Doc. 44 at ¶ 47].

---

[13] Plaintiff argues that the Court cannot consider the contents of the grievance in ruling on the Motion to Dismiss.  [Doc. 71 at 4–5].  While he cites the standard for consideration of extrinsic documents in ruling on a Rule 12(b)(6) motion, *see* [*id.* at 4], he appears to primarily argue that the Court should not consider the document because, in his view, the grievance will paint an incomplete picture of the case, *see* [*id.* at 4–5 ("Mr. McLaney's claims . . . are not based exclusively on Defendant Whigham's obviously inattentive response to Mr. McLaney's communication . . . but on her *whole* course of inaction despite awareness of his serious need for, and accruing injuries without, his medication. . . .  Mr. McLaney's claims concern [Ms. Whigham's] overall conduct, which will be demonstrated by *multiple* sources of evidence, including documents sought in discovery, deposition testimony, and more.")].  But this is not the standard for relying on extrinsic documents in deciding a motion to dismiss.  *See Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024) ("[C]ourts may . . . consider documents that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to in her complaint and that are central to her complaint and indisputably authentic.").  And Plaintiff does not direct the Court to any allegations setting out Ms. Whigham's "*whole* course of inaction" beyond the details contained in paragraph 47 of the Amended Complaint, which center on the grievance and her response.  *See generally* [Doc. 71; Doc. 44].  Because the grievance is referenced in the Amended Complaint, is central to Plaintiff's deliberate indifference claim against Ms. Whigham, and Plaintiff does not dispute its authenticity, the Court may and does consider it here.  *Cuervo*, 112 F.4th at 1312.

The County Defendants argue that "[s]ince Plaintiff did not ask for help in procuring his medications, Whigham had no constitutional obligation to question Wellpath's course of care for Plaintiff and, thus, was not deliberately indifferent." [Doc. 61 at 13]. But while it may be true that "[p]rison officials generally may rely on the advice and course of treatment prescribed by medical personnel," *see Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1265 (10th Cir. 2022), Mr. McLaney does not allege that any medical provider recommended that his chemotherapy medication be stopped, that Wellpath employees actually created any "course of treatment" for him, or that Ms. Whigham was following (or believed she was following) the advice of medical personnel. In fact, all of Plaintiff's allegations assert the opposite—that the daily chemotherapy medication was a necessary part of his ongoing treatment, but he was denied this necessary treatment. *See, e.g.*, [Doc. 44 at ¶¶ 31, 51, 56]. Plaintiff alleges facts sufficient to establish that Ms. Whigham, acting as a gatekeeper, knew that Mr. McLaney had stage-two leukemia, had not received his medication for over a month, and was feeling sicker by the day, but nevertheless "delay[ed] or refuse[d] to fulfill [her] gatekeeper role due to deliberate indifference." *Sealock*, 218 F.3d at 1211; *see also supra* note 7 (collecting cases). Claim One will not be dismissed against Ms. Whigham on this basis.[14]

**Sheriff Roybal.** Next, the County Defendants argue that the allegations against Sheriff Roybal in his individual capacity are insufficient to state a deliberate indifference

---

[14] The County Defendants also argue that "even if Whigham should have done more in response to Plaintiff's kite, the Complaint still fails to plausibly allege that any delay she caused resulted in 'substantial harm.'" [Doc. 61 at 14]. The Amended Complaint clearly alleges, however, that the denial of chemotherapy medication resulted in a shortening of Mr. McLaney's life expectancy. [Doc. 44 at ¶¶ 4, 60]. The Court concludes that this is sufficient to allege a substantial harm to Plaintiff's health.

claim.  [Doc. 61 at 14].  With respect to Sheriff Roybal, Mr. McLaney alleges that Nurse Dobyns "acknowledged to Mr. McLaney that she knew his [cancer] needed to be treated, but that there was an insurance problem while he was at CJC."  [Doc. 44 at ¶ 56].  In the next paragraph, Plaintiff alleges that Nurse Dobyns "indicated in her notes that she had spoken to the CJC management about Mr. McLaney's situation" and that, "[u]pon information and belief, Defendant Dobyns spoke to Defendant Roybal about Mr. McLaney's situation."  [*Id.* at ¶ 57].

The County Defendants challenge Mr. McLaney's reliance on this allegation, arguing that Plaintiff's conclusion that Nurse Dobyns must have been referencing Sheriff Roybal "requires this Court to take an implausible leap as there are no other factual allegations within the Complaint to suggest that Sheriff Roybal was the member of 'CJC management' with whom Dobyns spoke."  [Doc. 61 at 14].  They further contend that "there is no plausible basis to suggest that Sheriff Roybal knew of Plaintiff's medical condition."  [*Id.* at 14–15].  In response, Mr. McLaney asserts only that "Defendant Dobyns' note evinces [Sheriff Roybal's] personal participation in the cost-cutting denial of Mr. McLaney's life-saving medication."  [Doc. 71 at 10].

The Court respectfully disagrees with Plaintiff on this point.  To be clear, "pleading on information and belief is permissible."  *Wuhan Healthgen Biotechnology Corp. v. ExpressTec LLC*, No. 24-cv-04089-KHV, 2025 WL 548467, at *4 (D. Kan. Feb. 19, 2025).  Circuit courts "have largely agreed that factual allegations pled on information and belief should not be summarily rejected under *Twombly* where 'the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"  *Ahern Rentals, Inc. v.*

*EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (quoting *Arista Recs. LLC
v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (collecting cases).  But even so, and even
inferring that the reference to "CJC management" included Sheriff Roybal, there are
simply insufficient factual allegations to demonstrate Sheriff Roybal's knowledge of *a
serious risk to Plaintiff's health or safety*.  A vague reference suggesting that Sheriff
Roybal was informed about Plaintiff's "situation," *see* [Doc. 44 at ¶ 57], is insufficient to
establish such knowledge, and it does not permit the Court to make the inferential leap
that he "personal[ly] participat[ed] in the cost-cutting denial of Mr. McLaney's life-saving
medication," as Plaintiff suggests, *see* [Doc. 71 at 10].

Accordingly, the Court finds that there are insufficient allegations to state a
deliberate indifference claim against Sheriff Roybal in his individual capacity, and this
portion of Claim One is **DISMISSED without prejudice**.

## 2.    Qualified Immunity

Next, the County Defendants argue that Ms. Whigham is entitled to qualified
immunity.  [Doc. 61 at 16–17].[15]  "The doctrine of qualified immunity shields officials from
civil liability so long as their conduct 'does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*,
577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  A motion
to dismiss based on qualified immunity creates a presumption of immunity.  *Bledsoe v.
Carreno*, 53 F.4th 589, 606 (10th Cir. 2022).  Therefore, when a defendant raises qualified
immunity as a defense, the burden shifts to the plaintiff to demonstrate that the defense

---

[15] Because the Court has already dismissed Claim One against Deputy Rincon and
Sheriff Roybal in his individual capacity, the Court's qualified immunity analysis is limited
to Ms. Whigham.

is inapplicable. *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022). To rebut an assertion of qualified immunity, the plaintiff must establish "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quotation omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

The County Defendants argue that Ms. Whigham is entitled to qualified immunity because (1) the Amended Complaint fails to state a plausible deliberate indifference claim against her; and (2) "the law was not so clearly established in 2023 that every reasonable official in [her] position[] would have understood that [her] minimal—or absence of—interaction with Plaintiff during his four-month course of treatment by Wellpath would comprise a constitutional violation under the Fourteenth Amendment." [Doc. 61 at 17]. The Court has already dispensed of the County Defendants' first argument, so it focuses on whether the law was clearly established at the time of the alleged constitutional violation.

A right is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority in other courts provides that the right is clearly established. *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017); *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001). A case is considered "on point" if it involves materially similar conduct to the case at hand or applies "with obvious clarity" to the conduct at issue. *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quotation and emphasis omitted).

The Court must be mindful "not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quotation omitted). At the same time, "defining a right too narrowly risks making recovery against a public official virtually impossible because only 'those rare cases in which a precedential case existed which was "on all fours" factually with the case at bar' would abrogate qualified immunity." *Mayfield v. Bethards*, 826 F.3d 1252, 1258 (10th Cir. 2016) (quoting *Melton v. City of Okla. City*, 879 F.2d 706, 729 n.37 (10th Cir. 1989)).

In arguing that the law was clearly established at the time of the alleged violation, Mr. McLaney directs the Court to *Mata v. Saiz*, where the Tenth Circuit stated that "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." 427 F.3d at 749. Plaintiff argues that "the obviousness of Mr. McLaney's medical need, and the simplicity with which it could have been addressed, make[] this case one where the appropriate course of actions was truly obvious." [Doc. 71 at 11]. In their reply brief, the County Defendants do not address *Mata*, instead cursorily arguing that the district court cases cited by Plaintiff (in the context of defending the sufficiency of his allegations) "cannot suffice to show that the law was clearly established with respect to Whigham." [Doc. 78 at 8–9].

The Court concludes that, at this stage of the case, Plaintiff's allegations are sufficient to allege that Ms. Whigham violated a clearly established right. In the past several years, the Tenth Circuit has repeatedly confirmed that "when a detainee has

obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033 (10th Cir. 2020).

In *Sealock v. Colorado*, a 2000 case, an inmate was experiencing chest pain and prison officials were informed that the inmate may be experiencing a heart attack. 218 F.3d at 1208. A prison sergeant told the inmate that there was "nothing he could do for him," reasoning that he could not transport the inmate to an outside hospital because it was snowing. *Id.* The Tenth Circuit concluded that a reasonable jury could find that the sergeant was deliberately indifferent because there was evidence he knew that the inmate had a serious medical need but he refused to take action to address the need. *Id.* at 1210–11.

In *Olsen v. Layton Hills Mall*, a detainee informed the police officer arresting him that he was having a panic attack on the way to jail, but the officer "neglected to address [the detainee's] two pleas for assistance." 312 F.3d 1304, 1310 (10th Cir. 2002). Finding that "[t]he right to custodial medical care is clearly established," *id.* at 1315, the Tenth Circuit reversed the district court's grant of qualified immunity to the officer, recognizing that the officer "may have known of—and disregarded—an excessive risk to [the detainee's] health," and it was up to the jury to decide whether that was the case, *id.* at 1317 (emphasis omitted).

In *McCowan v. Morales*, a detainee informed an officer that he had a prior shoulder injury, that the lack of a seatbelt during his transport to the jail had re-injured his shoulder, and that he was in "excruciating" pain. 945 F.3d 1276, 1280–81 (10th Cir. 2019). Officers ignored his complaints and requests for help and delayed taking him from the jail to the

detention center (where medical care was available) for up to 150 minutes.  *Id.* at 1280, 1290.  The Tenth Circuit affirmed the denial of qualified immunity, concluding that *Sealock* and *Olsen* were "sufficiently analogous to the situation at issue . . . to have placed [the officer] on notice that his conduct (as [the detainee] allege[d] it) unconstitutionally deprived [the detainee] of medical care needed for a serious medical need."  *Id.* at 1293.

And finally, in *Lance v. Morris*, a detainee informed a guard that he was experiencing a medical condition, was in "considerable pain," and needed medical attention.  985 F.3d 787, 797 (10th Cir. 2021).  Jail officials nevertheless failed to timely respond to his request for medical treatment.  *Id.* at 792–93.  The Tenth Circuit affirmed the denial of qualified immunity to the officer because "a reasonable factfinder could infer that he had been aware of a substantial risk of serious harm and had knowingly disregarded that risk."  *Id.* at 798.  And relying on *Olsen* and *McCowan*, among other cases, the Tenth Circuit concluded that there was sufficient evidence to establish that the officer violated a clearly established right.  *Id.* at 799–800.  As the Tenth Circuit later explained, *Lance* "demonstrate[s] that it is deliberate indifference for jail officials to ignore calls for help even where those officials have limited information."  *Hardy*, 147 F.4th at 1170.

While these cases have some factual dissimilarities to the situation alleged by Plaintiff here, "[t]he law can be clearly established even when 'the very action in question' has not 'previously been held unlawful.'"  *Est. of Booker v. Gomez*, 745 F.3d 405, 433 (10th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  Furthermore, that some of the above cases may have involved more urgent situations does not change this Court's analysis.  *See Lance*, 985 F.3d at 800 ("[T]he scope of the constitutional duty isn't

diminished just because some of our prior opinions involved potentially life-threatening conditions. . . .  We've not required a life-threatening condition to trigger a constitutional duty to provide adequate medical care.").  Nor is it material that some of the above cases involved medical personnel, while Ms. Whigham was a non-medical jail official.  *See id.* ("[L]ay officials (just like medical professionals) can incur liability for delays in providing medical treatment.").

The Court finds that the above-cited cases are sufficiently similar to the allegations raised by Mr. McLaney.[16]  Like *Sealock*, *Olsen*, *McCowan*, and *Lance*, Ms. Whigham allegedly refused to act when alerted of Mr. McLaney's serious medical need, reports of worsening symptoms, and implied request for assistance, excusing her lack of action by stating that "medical" would need to assist Plaintiff.  [Doc. 61-1 at 1].  It may well be that facts uncovered through discovery will create a sufficient distinction between Ms. Whigham's actions or inactions and the above-cited authority.  But at this time, the Court finds that Plaintiff has met his burden to overcome the assertion of qualified immunity.  Accordingly, the County Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Claim One against Ms. Whigham.

### 3.    Municipal Liability

Finally, the County Defendants seek dismissal of Plaintiff's claims against El Paso County, which is now sued through the Board of County Commissioners, as well as the claims against Sheriff Roybal in his official capacity.  [Doc. 61 at 17].

"A municipal government is not liable for every constitutional violation by one of its

---

[16] Although Plaintiff did not cite these cases in his Response, *see* [Doc. 71 at 11–12], the Court is "not restricted to the cases cited by" Plaintiff, *Cortez v. McCauley*, 478 F.3d 1108, 1122 n.19 (10th Cir. 2007).

officers or employees." *Whitson*, 106 F.4th at 1066. A municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S at 691. Instead, "a municipality is responsible only for (1) actions taken by subordinate employees in conformity with preexisting official policies or customs and (2) actions taken by final policymakers, whose conduct 'can be no less described as the official policy of a municipality.'" *Whitson*, 106 F.4th at 1066–67 (quoting *Seifert v. Unified Gov't of Wyandotte Cnty.*, 779 F.3d 1141, 1159 (10th Cir. 2015)). This includes "even actions by final policymakers taken in defiance of a policy or custom that they themselves adopted." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007). For purposes of *Monell* liability, a municipal policy or custom can be shown through facts establishing:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up).

As framed in the Parties' briefing, the County Defendants' Motion to Dismiss attacks Plaintiff's ability to allege facts supporting three separate theories of municipal liability: (1) a failure-to-train theory; (2) a theory based on an alleged custom of providing deficient medical care at CJC; and (3) a theory based on an alleged custom of

underfunding medical care at CJC.  *See* [Doc. 61 at 17–19; Doc. 71 at 12–15].[17]

With respect to a failure-to-train theory, the County Defendants argue that the Amended Complaint "does not identify any specific aspect of El Paso County['s] or [El Paso County Sheriff's Office's] training or supervision that was supposedly deficient, much less explain how a supposed deficiency was the moving force behind the constitutional violation alleged," and that "[t]he failure to do so dooms this claim."  [Doc. 61 at 18].  Mr. McLaney responds that "[u]nder the non-delegation doctrine, Defendant El Paso County is liable for the unconstitutional . . . training . . . by Defendant Wellpath."  [Doc. 71 at 12].  The County Defendants reply that "'El Paso County' cannot be held liable under the non-delegable duty doctrine or any other theory of *Monell* liability" because it "had no control over the operation of CJC."  [Doc. 78 at 9].  This argument is not supported by any citation to legal authority.

The Court is respectfully unpersuaded by this argument.  In cases based on the non-delegable duty doctrine, "the question is not whether the County itself promulgated an unconstitutional policy or had notice of problems caused by [a contractor's] policy, but whether [the contractor] had an unconstitutional policy and otherwise satisfies the *Monell* requirements."  *Est. of Walter ex rel. Klodnicki v. Corr. Healthcare Companies, Inc.*, 323 F. Supp. 3d 1199, 1216 (D. Colo. 2018).  "If it does, the County can be liable because [the contractor] stepped into the County's shoes with the County's permission."  *Id.*; *see also Trujillo v. City & Cnty. of Denver*, No. 14-cv-02798-RBJ-MEH, 2016 WL 5791208, at *16 (D. Colo. Sept. 7, 2016) (finding that Denver Health's treatment customs could "be

---

[17] The County Defendants "[do] not move to dismiss Plaintiff's *Monell* claims based on its decision to contract with Wellpath."  [Doc. 61 at 19].

imputed to the City and County of Denver because of its delegation of health care services to Denver Health"). Courts in this District have thus concluded that a county may be a proper party for claims based on jail conditions "when a plaintiff alleges that [the county] 'was itself involved in setting or implementing a detention facility's allegedly unconstitutional policies.'" *Duran*, 2024 WL 2939167, at *10 (quoting *Rogacki v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, No. 21-cv-02281-CNS-KLM, 2023 WL 34755, at *2 (D. Colo. Jan. 4, 2023)); *see also id.* (declining to dismiss board of county commissioners because the board "may . . . be a proper party"); *cf. Rogacki*, 2023 WL 34755, at *2 (finding dismissal of claim against board of county commissioners unwarranted where the plaintiff alleged that the board participated in the jail's operation and failed to train, supervise, or discipline jail staff).

Here, Plaintiff alleges that both the County and Sheriff Roybal were responsible for selecting and retaining Wellpath's medical-care services. [Doc. 44 at ¶¶ 14, 81, 148, 153–55]. And they allege that Wellpath "repeatedly relied on inexperienced workers, offered minimal training, and understaffed facilities." [*Id.* at ¶ 108]. Because Plaintiff relies on the non-delegation doctrine to raise a failure-to-train theory, and because the County Defendants do not challenge the sufficiency of these allegations with respect to Wellpath, and the Court finds that dismissal is not warranted at this time. The County Defendants may re-raise their arguments at a later stage in the proceedings, after discovery is complete.

Next, the County Defendants argue that, insofar as Plaintiff alleges a custom of providing deficient medical and mental health care in CJC, "El Paso County cannot be held directly responsible for this supposed custom because El Paso County and its

employees did not provide medical or mental health care to detained individuals during the relevant times.  Wellpath did."  [Doc. 61 at 19 (citing [Doc. 44 at ¶ 14])].  They also assert that "[f]or the same reasons, El Paso County . . . cannot be directly liable for Wellpath's alleged custom of cost-cutting measures."  [*Id.*].  But again, the Amended Complaint alleges that Wellpath "contracted with" the County "to provide medical and mental health care at the CJC."  [Doc. 44 at ¶ 14].  If true, Wellpath's alleged unconstitutional policies "became the County's policies."  *Est. of Walter*, 323 F. Supp. 3d at 1216.  Dismissal is not warranted on this basis.

Finally, the County Defendants argue that "Plaintiff's underlying allegation that any party maintained an informal custom of denying inmates their necessary medication because of costs is premised on conclusory allegations and fails as a result."  [Doc. 61 at 19].  The Court respectfully disagrees and finds that the Amended Complaint contains sufficient factual allegations to support this *Monell* theory of relief.  *See* [Doc. 44 at ¶¶ 54–55, 79–85, 103, 120, 155].

Accordingly, the Court will not dismiss Plaintiff's *Monell* claim under Rule 12(b)(6).  The County Defendants' Motion to Dismiss is **DENIED** in this respect.

### D.    Claim Two

Finally, the County Defendants argue that the Court should dismiss Claim Two as to Sheriff Roybal in his individual capacity, Deputy Rincon, and Ms. Whigham.  They contend that "[t]he Court should decline supplemental jurisdiction over [the claim] because [it] involve[s] novel issues of state law that should be resolved by a state court."  [Doc. 61 at 20].  The County Defendants do not identify what they perceive to be the "novel issue[] of state law," but they cite *Estate of Canett v. Wellpath, LLC* for the

proposition that "Colorado courts have not determined whether the due process provision and cruel and unusual punishment provisions of the Colorado Constitution includes the right to receive objectively reasonable medical care as a pretrial detainee." No. 23-cv-01211-DDD-MDB, ECF No. 78 (D. Colo. March 27, 2024).

A federal district court may decline to exercise supplemental jurisdiction over a claim if it raises a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1). However, making such a determination at this stage of the case would be premature. The case is still at its earliest stages, discovery has not yet commenced, and the full contours of Claim Two are unclear to the Court (and the Parties, as well). It would not be in the interest of justice to make such a determination at this time.

The County Defendants also assert that Claim Two should be dismissed because it "fail[s] for the same reasons as Plaintiff's § 1983 claims—the individual County Defendants were not deliberately indifferent." [Doc. 61 at 20]. But the County Defendants provide no legal authority demonstrating that Claim Two must be evaluated using the same standards as Claim One. *Cf. People v. Young*, 814 P.2d 834, 842 (Colo. 1991) ("The existence of federal constitutional provisions essentially the same as those to be found in our state constitution does not abrogate our responsibility to engage in an independent analysis of state constitutional principles in resolving a state constitutional question."), *abrogated by statute on other grounds as recognized in People v. Vance*, 933 P.2d 576, 577 n.2 (Colo. 1997). And the Court will not construct arguments on the Parties' behalf. *Lebahn v. Owens*, 813 F.3d 1300, 1307–08 (10th Cir. 2016). The County Defendants have thus not demonstrated that dismissal is warranted on this basis. Accordingly, the County Defendants' Motion to Dismiss is **DENIED** to the extent it seeks

dismissal of Claim Two.[18]

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     The County Defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [Doc. 61] is **GRANTED in part** and **DENIED in part**;

(2)     Donielle Coddington and Evie Decker's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 69] is **GRANTED in part** and **DENIED in part**;

(3)     The Clerk of Court is **DIRECTED** to amend the case caption to replace "El Paso County" with "The Board of County Commissioners of the County of El Paso";

(4)     Claim One is **DISMISSED without prejudice** as to Defendants Donielle Coddington, Sandra Rincon, and Joseph Roybal in his individual capacity; and

(5)     Claim Three is **DISMISSED without prejudice** as to Defendant Kayla Whigham.


DATED:  February 10, 2026                    BY THE COURT:

                                             Nina Y. Wang
                                             United States District Judge

---

[18] The County Defendants' Motion to Dismiss states, in a footnote, that "[a]t all relevant times, Whigham was a civilian employee who did not meet the ELIA's definition of a 'peace officer.'"  [Doc. 61 at 20 n.7].  But this argument is not based on allegations in the Amended Complaint, and the Motion to Dismiss does not expressly seek dismissal of Claim Two on this basis.  Accordingly, the Court will not dismiss Claim Two against Ms. Whigham at this time.